UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
QUAYSHAUN SMITH,

                  Plaintiff,          **MEMORANDUM AND ORDER**
                                                  19-cv-6198 (KAM)(VMS)

        -against-

THE CITY OF NEW YORK, et al,

                  Defendants.
--------------------------------------X
**MATSUMOTO**, United States District Judge:

        Plaintiff Quayshaun Smith ("Plaintiff") moves, pursuant to 42 U.S.C. § 1988, to recover attorney's fees in the amount of $66,580.00 and costs in the amount of $669.65 for work performed by his attorney, Gregory Zenon, Esq.  For the reasons set below, the Court grants in part and denies in part Plaintiff's application, and awards fees in the amount of $32,175.50 and costs in the amount of $622.25.

**BACKGROUND**

**I.   Factual Background**

        At approximately 6:00 p.m. on August 3, 2018, in the vicinity of 1992 East 29th Street in Kings County, New York, Plaintiff was in a parked car with two other occupants when Defendant Police Officer James Titus ("Titus") and another officer pulled up in a vehicle next to the car Plaintiff was in.  (ECF No. 11, Amended Complaint ("Amended Compl.") ¶ 13.)  The two officers

1

exited their vehicle with their weapons drawn, ordered Plaintiff and the other occupants to exit the car, and told Plaintiff to place his hands behind his back. (*Id.* ¶¶ 14–15.) Plaintiff fled from the officers. (*Id.* ¶ 16.) The officers pursued Plaintiff down a block into a driveway, where they were joined by ten to fifteen other officers. (*Id.* ¶¶ 17–18.) The group of officers surrounded Plaintiff and ordered him to freeze and place his hands above his head. (*Id.* ¶ 19.) Plaintiff complied. (*Id.* ¶ 20.) Defendant Titus then tased Plaintiff in the abdomen, immobilizing him and causing him to fall to the ground face first, with his hands behind him. (*Id.* ¶ 23.) Defendant Police Officers Agron Pervizi and Hern (first name unknown) apprehended Plaintiff. (*Id.* ¶ 24.) Plaintiff sustained taser prong wounds, general bruising and swelling, and a broken upper left front tooth from the arrest. (*Id.* ¶ 25.)

After the arrest, Plaintiff was detained in a police car and was subsequently driven to the precinct by Defendant Police Officers Nicholas Felix and Artem Makaryan. (*Id.* ¶¶ 26, 28.) Plaintiff demanded medical treatment both at the scene and while being driven to the precinct but was not provided treatment then. (*Id.* ¶¶ 27–28.) At the precinct, Plaintiff was shackled and placed in a cell. (*Id.* ¶ 29.) Thereafter, an ambulance transported Plaintiff to Coney Island Hospital, where he was treated for his taser wounds but not for his broken tooth. (*Id.* ¶ 30.) Plaintiff

was then transported back to the precinct and was detained for several hours while still shackled.  (*Id.* ¶ 31.)  After several hours of detention, Plaintiff underwent an identification procedure, which resulted in a negative identification.  (*Id.* ¶¶ 32–33.)  He was then taken back to his cell.  (*Id.* ¶ 34.)  After several more hours, Defendant Titus entered Plaintiff's cell, apologized, and told Plaintiff that he was mistakenly arrested for a robbery and was being released.  (*Id.* ¶¶ 34–35.)  Subsequently, another officer unshackled Plaintiff and processed his release. (*Id.* ¶ 36.)

## II.  Procedural Background

On November 1, 2019, Plaintiff commenced this Section 1983 action against the City of New York, Police Officer James Titus, and fifteen John and Jane Doe Defendants (together, "Original Defendants"), alleging, *inter alia*, excessive force, false arrest and imprisonment, and malicious prosecution.  (*See generally* ECF No. 1, Complaint ("Compl.").)  The Complaint also alleged violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, Sections 5, 6, 11, and 12[1] of Article 1 of the New York State Constitution, and New York common law.  (*Id.*)  On February 7, 2020, the City of New York

---

[1] The Complaint cites Article 1, Sections 6, 11, and 12 of the New York State Constitution in its Preliminary Statement, (Compl. ¶ 1), and Article 1, Sections 5, 6, and 12 of the New York State Constitution under Causes of Action.  (*Id.* ¶ 112.)

("City Defendant") answered the complaint, denying most allegations and asserting eleven affirmative defenses. (*See generally* ECF No. 8, City Defendant's Answer.)

On February 25, 2020, the parties exchanged initial disclosures. (ECF No. 24, Declaration of Aaron Davison in Opposition to Plaintiff's Motion for Attorney's Fees and Costs ("Davison Decl."), Ex. B, D.) Magistrate Judge Vera M. Scanlon held an initial conference with the parties on February 26, 2020, and set the discovery deadline as September 18, 2020. (ECF No. 10.) On February 27, 2020, counsel for City Defendant mailed to Plaintiff body-worn camera video footage of the August 3, 2018 incident. (Davison Decl. ¶ 8.)

On March 13, 2020, Plaintiff filed an amended complaint, additionally naming Police Officers Makaryan, Felix, Pervizi, and Hern as defendants (together with Original Defendants, "Defendants"). (*See generally* Amended Compl.) Furthermore, the Amended Complaint set forth amended allegations regarding the timing of the August 3, 2018 incident, Police Officer Defendants' conduct before, during, and after Plaintiff's arrest, and the extent of Plaintiff's injuries. (*See* Am. Compl. ¶¶ 13, 19—28, 33—37.) City Defendant and Defendant Titus answered the Amended Complaint on March 25, 2020, denying most allegations and asserting the same eleven affirmative defenses, with the addition of a twelfth affirmative defense based on Defendant Titus' qualified

4

immunity.   (ECF No. 13, Answer to Amended Complaint of City Defendant and Defendant Titus.)

On April 13, 2020, the parties filed a joint motion to stay the case for ninety days in light of the COVID-19 pandemic. (ECF No. 14.)  The Court granted the parties' motion and extended the discovery deadline to December 17, 2020.  (Order dated Apr. 14, 2020.)  Between April 14, 2020, and October 16, 2020, the parties communicated regarding medical releases (ECF No. 25, Plaintiff's Reply Memorandum of Law ("Pl. Reply"), Ex. 26), settlements obtained in similar cases (Pl. Reply Ex. 22), and conducted five settlement discussions by telephone.  (Davison Decl. ¶ 13).

On October 16, 2020, City Defendant and Defendant Titus made a Rule 68 offer of judgment to Plaintiff in the amount of $10,001.00, "plus reasonable attorneys' fees, expenses, and costs to the date of this offer for plaintiff's federal claims."  (ECF No. 15-1.)  Plaintiff accepted the offer on October 27, 2020.  (ECF No. 15.)

On November 2, 2020, Defendants requested Plaintiff's counsel for a record of his time billed and costs, in an effort to reach an agreement on attorney's fees and costs.  (Davison Decl. Ex. G.)  On November 5, 2020, Plaintiff filed a consent motion for an extension of time for the parties to resolve attorney's fees and costs.  (ECF No. 16).  The Court granted the motion and gave

the parties until February 2, 2021 to file a stipulation of dismissal or a further status update. (Order dated Nov. 10, 2020.) Plaintiff's counsel sent the record of his hours and costs to Defendants on January 14, 2021. (Davison Decl. Ex. H, I.) On February 2, 2021, Plaintiff filed a second consent motion for an extension of time for the parties to resolve attorney's fees and costs. (ECF No. 17.) The Court granted the motion and gave the parties until February 26, 2021. (Order dated Feb. 2, 2021.)

On February 26, 2021, Plaintiff filed a motion for leave to file a motion for attorney's fees, requesting until April 2, 2021 to file the motion. (ECF No. 19.) The Court denied Plaintiff's motion for leave without prejudice and ordered the parties to confer and file a proposed briefing schedule. (Order dated Mar. 1, 2021.) On March 12, 2021, the parties filed a proposed briefing schedule, which was adopted by the Court. (Order dated Mar. 12, 2021.) The motion was fully briefed on June 6, 2021. (ECF Nos. 22, Plaintiff's Notice of Motion for Attorney's Fees and Costs; 22-2, Plaintiff's Memorandum of Law in Support of the Motion for Attorney's Fees and Costs; 23, Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees and Costs; 25, Plaintiff's Reply Memorandum of Law in Further Support of the Motion for Attorney's Fees and Costs.)

## III. Amounts Sought

Plaintiff seeks a total fee award of $66,580.00, reflecting 169.45 hours worked at the rate of $400 per hour, with the exception of travel time, which was billed at the half rate of $200 per hour.  (ECF No. 22-1, Declaration of Gregory Zenon in Support of Plaintiff's Motion for Attorney's Fees ("Zenon Decl.") ¶ 4.)  Of the 169.45 hours, 145.15 were billed up to the date of the Rule 68 offer, and the remaining 24.3 were expended preparing the instant motion for attorney's fees.  (*Id.*)  Plaintiff also seeks an award of costs incurred prior to the date of the Rule 68 offer, in the amount of $669.65.  (*Id.*)

## DISCUSSION

## I.   Plaintiff is Entitled to Attorney's Fees and Costs

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988,[2] authorizes district courts to award reasonable attorney's fees to prevailing parties in civil rights litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  "To qualify as a prevailing party, a plaintiff must obtain at least some relief on the merits of his claim."  *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 934 F.3d 238, 243 (2d

---

[2] 42 U.S.C. 1988(b) states, "In any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."

Cir. 2019) (citing *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)) (internal quotation marks omitted).

Plaintiff accepted a Rule 68 offer of judgment and obtained monetary relief in the amount of $10,001.00. (*See* ECF Nos. 15; 15-1; Davison Decl. ¶ 14.) Thus, he is a prevailing party within the meaning of Section 1988 and entitled to a reasonable attorney's fee award. *See Lyte v. Sara Lee Corp.*, 950 F.2d 101, 104 (2d Cir. 1991) (finding that Title VII plaintiff who accepted a Rule 68 offer of judgment is a prevailing party entitled to attorney's fees and costs, relying on "opinions regarding fees in cases decided under sections 1983 and 1988"); *see also Thomas v. City of New York*, No. 14-cv-7513(ENV), 2017 WL 6033532, at *2 (E.D.N.Y. Dec. 1, 2017) ("A party that accepts a Rule 68 offer is considered a 'prevailing party' under Section 1988.") (internal quotation marks and citation omitted), *R. & R. adopted*, Order dated Apr. 30, 2018.

## II. **Reasonable Attorney's Fees**

Once the court determines that a party has prevailed, it must determine and calculate a reasonable attorney's fee award. District courts are given "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Barfield v. N.Y.C. Health and Hosp. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008).

In this Circuit, district courts use what is commonly referred to as the "lodestar" method to calculate a presumptively reasonable fee, which involves multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008). "[A] district court may, in extraordinary circumstances, adjust the presumptively reasonable fee when it 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (citing *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011)).

## A.    Reasonable Hourly Rate

A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.  This rate should be based on rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (internal quotation marks and citations omitted).  "The 'community' is generally considered the district where the district court sits." *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18-cv-126(FB), 2019 WL 3937126, at *14 (E.D.N.Y.

July 3, 2019) (citation omitted), *R. & R. adopted*, Order dated Aug. 20, 2019.

In addition to the prevailing district rates, courts consider the case-specific factors set forth in *Arbor Hill* and *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92—93 (1989).[3]  *HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 595 (S.D.N.Y. 2021).  The *Arbor Hill* factors are:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent renumeration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

522 F.3d at 184.

---

[3] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717—19.

"In recent § 1983 cases, courts in this District have set reasonable hourly rates at approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-$100 for paralegals." *Anania v. United States*, No. 16-cv-3542(SJF), 2021 WL 76837, at *4 (E.D.N.Y. Jan. 8, 2021). For "garden variety" Section 1983 cases of limited complexity, courts in the District have awarded partners hourly rates in the middle of the $300—$450 range. *See, e.g.*, *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 252—53 (E.D.N.Y. 2020) (awarding $350 per hour to an attorney with twenty years of practice and about eleven years of civil rights litigation experience, in a Section 1983 case that lasted five and a half years with "complex" discovery and a "relatively straightforward" trial); *Murray v. Marshall*, No. 15-cv-599(RPK), 2020 WL 5899851, at *2—*3 (E.D.N.Y. Mar. 16, 2020) (recommending $350 per hour for an attorney with approximately twenty years of experience "in the area of police misconduct litigation . . . handling more than 250 cases," reasoning, *inter alia*, that the "case was not complicated," "did not involve novel issues of law," and "[w]hile acceptance of a Rule 68 offer . . . is a generally successful outcome for Plaintiff, it is not the kind of success that justifies a greater than normal hourly rate for counsel"), *R. & R. adopted as modified*, 2020 WL 3819075 (E.D.N.Y. July 8, 2020).

Plaintiff's counsel, Gregory Zenon ("Zenon"), seeks an hourly rate of $400, which is at the higher end of fees awarded to partners in this District for civil rights actions. (Zenon Decl. ¶ 4.) Mr. Zenon, a 1999 graduate of Brooklyn Law School, worked at the Kings County District Attorney's Office from 1999 until 2006, when he founded a private practice focused on criminal defense and civil rights. (*Id.* ¶¶ 9–11.) Mr. Zenon states that over the past sixteen years, he has handled over 75 cases involving police misconduct claims, over 50 of which were litigated in the Eastern and Southern Districts of New York. (*Id.* ¶¶ 14, 16.)

Defendants contend that Mr. Zenon should be awarded $325 per hour, based on his experience and the garden variety nature of this action. (ECF No. 23, Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees and Costs ("Def. Opp."), at 5.) Defendants argue that Mr. Zenon is not entitled to $400 per hour because, according to the electronic case filing system, he is the counsel of record for a total of 33 cases filed in the Eastern and Southern Districts. (*Id.* at 6–7.) According to Defendants, of those 33 cases, "(1) the earliest appears to have been filed in 2010; (2) two of the cases overlap since they were removed from [the Southern District] to [the Eastern District]; (3) only two were litigated through the summary judgment stage; (4) the majority appeared to have settled fairly early in litigation; and (5) none were [sic] actually tried." (*Id.*)

12

Defendants also argue that because Mr. Zenon is a solo practitioner, "he is not entitled to the upper range of attorney's fees reserved for practices larger than his." (*Id.* at 6.) Finally, Defendants assert that Mr. Zenon is not entitled to the upper range of attorney's fees, in light of the "uncomplicated" and "garden-variety nature" of this case, as demonstrated by the fact that "the parties only exchanged sixteen pages of initial disclosures, appeared for a single initial conference, and conducted no depositions or motion practice for the nearly twelve month span of this litigation." (*Id.* at 9—10.)

The Court finds the hourly rate of $350 to be reasonable and appropriate for Mr. Zenon. As an initial matter, the Second Circuit has cautioned against treating "an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate," reasoning that "[o]verhead is not a valid reason for why certain attorneys should be awarded a higher or lower hourly rate" and that "the reasonable hourly rate must instead be determined by reference to prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation." *McDonald v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 97 n.6 (2d Cir. 2006) (internal quotation marks and citations omitted).

The Court finds that Mr. Zenon's experience supports an hourly rate within the range for partners in this District. *See, e.g.*, *Torcivia*, 437 F. Supp. 3d at 252 (attorney's eleven years of civil rights litigation experience and preceding nine years of experience as a prosecutor "make[ ] clear that her hourly rate must fall within the range for partner"). However, several case-specific factors weigh against an award of a rate in the upper range. The instant action was a garden variety Section 1983 case involving relatively straightforward claims and uncomplicated facts. Additionally, the litigation lasted for less than a year, of which three months were stayed due to the COVID-19 pandemic. Over the course of the litigation, the parties appeared for an initial conference before Judge Scanlon, exchanged initial disclosures, and did not conduct depositions or engage in motion practice. And by early June 2020, the parties were engaged in settlement negotiations, for which they are to be commended. (*See* Pl. Reply at 17.) The limited complexity and demands of this case were such that counsel would not have been precluded from accepting other cases. Considering all the case-specific factors and that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively, the Court finds that an hourly rate of $350.00 is reasonable for Mr. Zenon.

**B.     Reasonable Number of Hours**

The Court next considers the reasonableness of Mr. Zenon's claimed 169.45 hours.  The party seeking attorney's fees must submit contemporaneously created time records in support of his fee application, and the district court has discretion to reduce the claimed hours "where proposed billing schedules are unsupported by evidence or objectively unreasonable." *Martinez v. City of New York*, 330 F.R.D. 60, 71–72 (E.D.N.Y. 2019) (citation omitted).  *See Schwartz v. U.S. Drug Enf't Admin.*, No. 13-cv-5004(CBA), 2019 WL 1299192, at *10 (E.D.N.Y. Mar. 1, 2019) ("When reviewing an application for attorneys' fees, the Court should exclude 'excessive, redundant or otherwise unnecessary' hours.") (citing *Hensley*, 461 U.S. at 434).  "Where entries on a time sheet are vague or duplicative or otherwise insufficient, a court need not itemize individual entries as excessive; rather, it may make an 'across-the-board reduction, or percentage cut, in the amount of hours.'" *Martinez*, 330 F.R.D. at 72 (citations omitted).  *See also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.").

Plaintiff seeks $66,580 for 169.45 hours billed on this case, of which $56,860 accounts for the 145.15 hours expended up to the date of the Rule 68 offer, and $9,720 for the 24.3 hours spent preparing the instant application for attorney's fees and costs.  (Zenon Decl., Ex. 1 ("Pl. Billing Statement").)

Defendants argue that the hours claimed by Mr. Zenon are excessive for the following reasons: (1) the hours predating the commencement of the federal action or related to the state law claims are not recoverable; (2) the hours postdating the Rule 68 offer of judgment are not recoverable; (3) counsel inflated the time spent on brief tasks by billing in 0.1-hour increments; (4) counsel spent excessive amounts of time on certain tasks; and (5) counsel billed at an attorney rate for clerical tasks.  (Def. Opp. at 10–15.)

### 1.  Hours Predating the Commencement of the Federal Action and/or Related to State Law Claims

First, Defendants argue that the 57.45 hours billed prior to the commencement of the federal action and/or related to the state law claims are not recoverable based on the express language of the Rule 68 offer.  (Def. Opp. at 11.)  According to Defendants, these hours encompass work including, but not limited to: drafting the notice of claim, preparing for and attending Plaintiff's 50-h hearing, reviewing the transcript of the hearing, research related to the early settlement demand, communications

16

with the early settlement office, investigating Plaintiff and Defendant Titus' respective backgrounds and Plaintiff's criminal and parole history, meeting with potential litigation funders, research on state law negligence issues for the Amended Complaint, and investigating lien issues. (*Id.*)

In response, Plaintiff contends that the state law claims are relevant because they "aris[e] out of the same common nucleus of operative facts" as the federal claims. (Pl. Reply at 2.) Plaintiff also argues that the work performed prior to the filing of the complaint in the federal action is relevant. Specifically, Plaintiff asserts that he filed a notice of claim to preserve his state law claims for the federal action, (*id.* at 3) and that the time spent on researching various issues (*i.e.*, lost front tooth settlements) for the early settlement demand is relevant because the issues relate to "the facts and claims of the Complaint." (*Id.* at 4.) Furthermore, Plaintiff asserts that the time spent on Plaintiff's 50-h hearing and preparing the early settlement demand is relevant because "much of the factual information contained in the Complaint came from and is reflected in the 50-H testimony" and counsel drafted the settlement demand "with the knowledge that it would be discoverable in the federal case." (*Id.* at 3–5.)

"As a condition precedent to the commencement of an action against a municipality or any of its employees, [New York General Municipal Law § 50] requires that a notice of claim be filed with the municipality within ninety days after the claims arise[ ]." *Croke v. Cnty. of Suffolk*, No. 19-cv-4124(DLI), 2021 WL 4311000, at *8 (E.D.N.Y. Sept. 21, 2021) (citing N.Y. Gen. Mun. L. § 50-e(1)(a)). When a notice of claim is filed against a municipality, New York General Municipal Law § 50-h permits the municipality to "demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made," and where a demand for examination has been served, "no action shall be commenced against the [municipality] against which the claim is made unless the claimant has duly complied with such demand for examination, which compliance shall be in addition to the requirements of section [50-e]." N.Y. Gen. Mun. Law § 50-h(1), (5).

New York's notice of claim requirements are not conditions precedent to claims brought pursuant to Section 1983. *See Day v. Moscow*, 955 F. 2d 807, 813-14 (2d Cir. 1992) (filing a notice of claim was not a condition precedent to bringing a Section 1983 claim in federal court); *Horvath v. Daniel*, Nos. 04-cv-9207(WCC), 05-cv-6275(WCC), 2006 WL 47683 (S.D.N.Y. Jan. 9, 2006) ("Courts in this Circuit have repeatedly held that '[t]he notice of claim requirement is not applicable to federal claims under

section 1983.'") (citation omitted); *Fanelli v. City of New York*, No. 13-cv-1423(KBF), 2013 WL 6017904, at *5 (S.D.N.Y. Nov. 1, 2013) ("New York State notice of claim requirements do not apply to claims brought pursuant to Section 1983.") (citation omitted).

"Like a typical settlement agreement, an accepted Rule 68 offer of judgment is a contract, and it must be interpreted according to ordinary contract principles." *Lilly*, 934 F.3d at 236 (citing *Steiner v. Lewmar, Inc.*, 816 F.3d 26, 31 (2d Cir. 2016)). When construing an unambiguous Rule 68 offer, the Court "must not alter or go beyond the express terms of the parties' agreement." *Coley v. City of New York*, No. 15-cv-5132(KAM), 2016 WL 11263671, at *5 (E.D.N.Y. Dec. 30, 2016) (internal quotation marks and citation omitted), *R. & R. adopted*, 2017 WL 1162177 (E.D.N.Y. Mar. 28, 2017).

Courts in this circuit have held that plaintiffs cannot recover fees for work performed by their attorneys on state law claims when their Rule 68 offer explicitly provides that they can only recover fees related to federal claims. *See, e.g.*, *Coley*, 2016 WL 11263671 at *5 (holding that plaintiffs who accepted a Rule 68 offer of judgment that provided for "reasonable attorneys' fees . . . for the federal claims of plaintiffs" were not entitled to fees for the hours their counsel spent drafting one plaintiff's notice of claim and attending his 50-h hearing); *Hill v. City of New York*, No. 19-cv-7882(PKC), 2021 WL 1062585, at *4 (S.D.N.Y.

Mar. 18, 2021) (deducting time spent on work "relat[ing] solely to state proceedings, including the preparation and filing of a notice of claim under section 50-e and work related to a hearing held pursuant to section 50-h," where the offer of judgment provided for "reasonable attorney's fees . . . for plaintiff's *federal claims*"); *Jean-Louis v. City of New York*, 342 F. Supp. 3d 436, 443–44 (S.D.N.Y. 2018) (deducting the time spent on state law claims and rejecting plaintiff's assertion that "all work on all claims was inextricably intertwined," noting that "[t]he City's offer of judgment included within its scope state law claims against the City of New York and its employees but its offer to pay reasonable fees and costs was expressly limited to the federal claims" and thus "[t]here is no fee shifting provision that would entitle a party to recover attorney's fees on its state law claims.").

Here, the Rule 68 offer allowed Plaintiff to take a judgment against City Defendant on all state and federal claim in this action for $10,001.00, "plus reasonable attorneys' fees, expenses, and costs to the date of this offer for plaintiff's *federal claims*." (ECF No. 15-1 (emphasis added).) Thus, Plaintiff accepted an offer of judgment against City Defendant for all of claims, and also accepted that attorney's fees could only be received for his federal claims. The plain language of the Rule 68 offer explicitly limits attorney's fees to time spent on

20

Plaintiff's federal claims.  For these reasons, Plaintiff cannot recover for time spent on New York's notice of claim requirements, which are not prerequisites for bringing Section 1983 claims, and on work relating solely to the state law claims.  Accordingly, Plaintiff cannot recover fees for: (1) 1.4 hours spent on work related to the notice of claim; (2) 10.8 hours spent on work related to Plaintiff's 50-h hearing; (3) 16.5 hours spent on researching various issues for the early settlement demand to the New York City Comptroller's Office; (4) 3.0 hours spent on communications and discussions related to early settlement; (5) 2.3 hours spent on researching negligence issues; and (6) 1.0 hour spent on investigating "def lien issues," which do not appear to be related to the instant action.  (Pl. Billing Statement.)  The Court therefore deducts 35 hours from the 169.45 hours claimed by Mr. Zenon.

### 2.   Time Spent on the Instant Motion ("Fees on Fees")

In addition, Defendants assert that Mr. Zenon cannot recover fees for the 24.3 hours he spent preparing the instant application for attorney's fees and costs, the so-called "fees on fees." (Def. Opp. at 12; *see also* Pl. Billing Statement.)  The Court agrees that, based on the clear terms of the offer of judgment, Mr. Zenon cannot recover fees for the time spent on this fees motion.  A district court ordinarily has the authority to grant attorney's fees for time spent preparing fee applications,

21

*Lilly*, 934 F.3d at 235, however, the Rule 68 offer is a contract, and "'where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms.'" *Id.* at 236 (quoting *Steiner*, 816 F.3d at 29). Where a Rule 68 offer explicitly "contemplate[s] the payment of attorney's fees only 'up until the date of the offer,'" the attorney may not subsequently collect fees for the cost of litigation postdating the Rule 68 offer. *Id.* at 235. "This includes fees for work performed preparing a fee application submitted to the district court in the event the parties are unable to agree on the attorney's fees to be awarded despite a good faith effort to negotiate." *Id.* at 237. *See id.* at 235–36 (holding that the district court, by awarding plaintiff fees "beyond what the parties agreed to . . . effectively rewrote the contract[, which] it cannot do.").

Here, the Rule 68 offer of judgment, dated October 16, 2020, explicitly provides that Plaintiff may take a judgment of $10,001.00, "plus reasonable attorneys' fees, expenses, and costs *to the date of this offer* for plaintiff's federal claims." (ECF No. 15-1 (emphasis added).) Plaintiff accepted the Rule 68 offer on October 27, 2020. (ECF No. 15.) The fees Mr. Zenon charged for work on the fee application were incurred between March 2, 2021, and April 8, 2021, after the October 16, 2020 cut-off date for fees in the Rule 68 offer. (Pl. Billing Statement.) Therefore, such fees cannot be recovered by Plaintiff, and this

Court does not have the authority to award them.   For these reasons, the Court further deducts 24.3 hours from the hours claimed by Mr. Zenon for time expended after October 16, 2020.

### 3.   Excessive Billing

Defendants also contend that the hours sought by Mr. Zenon are excessive, for the following reasons: (1) counsel billed 0.1 hour for each brief, mundane task to inflate the total number of hours billed; (2) counsel billed excessive amounts of time on certain tasks; and (3) counsel billed at an attorney rate for time spent on clerical tasks.   The Court addresses each of these points in turn.

### Vague Billing Entries

Defendants argue that Mr. Zenon unreasonably billed in 0.1-hour increments on twenty occasions to inflate his hours. (Def. Opp. at 13.)   In fact, Mr. Zenon's time record includes a total of thirty-nine 0.1-hour entries for time spent on tasks such as communicating with Plaintiff, communicating with Plaintiff's family, corresponding with opposing counsel, and reviewing the case docket.[4]   (Pl. Billing Statement.)   Calculated at Mr. Zenon's

---

[4] Plaintiff's counsel specifically seeks to collect for the following 0.1 hour increments of billed time: (1) August 8, 2018 "discussion with client"; (2) September 17, 2018 "discussion w/ client"; (3) September 25, 2018 "discussions w/ potential wits"; (4) October 2, 2018 "discussion w/ client"; (5) October 29, 2018 "discussions w/ client"; (6) November 19, 2018 "discussions w/ client"; (7) February 4, 2019 "discussions w/ client"; (8) February 20, 2019 "discussion w/ family"; (9) March 7, 2019 "discussions w/ client"; (10) March 20, 2019 "discussions w/ family"; (11) April 3, 2019 "discussions w/ family"; (12) April 4, 2019 "discussions w/ potential wits"; (13) May 6, 2019 "discussions w/ family"; (14) June 19, 2019 "discussions w/ client & family"; (15) October 27,

requested rate of $400.00, the total amount he seeks to collect
for these 0.1-hour entries is $1,560.00.

Courts in this circuit have found that billing 0.1 hours
for each brief, trivial task is an inflationary billing tactic
that results in excessive billing. *See, e.g.*, *Andert v. Allied
Interstate, LLC*, No. 12-cv-7010(PAC), 2013 WL 3833077, at *3
(S.D.N.Y. July 17, 2013) (finding "the number of hours billed . .
. excessive, as the total consists of many '0.1 hours' entries for
tasks that entail trivial effort at best. For example, . . . a
time entry of '0.7 hours' for merely reviewing the receipt of seven
ECF confirmation emails, billing 0.1 hours for each ECF email
received."); *Schoolcraft v. City of New York*, No. 10-cv-6005(RWS),
2016 WL 4626568, at *13 (S.D.N.Y. Sept. 6, 2016) ("where attorneys
and staff have billed multiple entries of '0.1 hour'—often several
on one day—for very brief, mundane tasks such as emailing a
document, e-filing, or receiving a notice of appearance or other

---

2019 "discussion w/ client"; (16) November 1, 2019 "discussion w/ client"; (17)
November 2, 2019 "discussion w/ family"; (18) December 3, 2019 "communications
w/ process server"; (19) December 27, 2019 "communications with d/c & client";
(20) March 15, 2020 "correspondence d/c"; (21) March 19, 2020 "correspondence
d/c"; (22) April 4, 2020 "rev ECF updates"; (23) May 1, 2020 "discussion w/
family"; (24) May 18, 2020 "discussion w/ family"; (25) June 3, 2020 "discussion
w/ family"; (26) June 11, 2020 "correspondence d/c"; (27) June 24, 2020
"discussion w/ client"; (28) June 25, 2020 "correspondence d/c"; (29) July 20,
2020 "correspondence d/c"; (30) July 20, 2020 "discussion w/ family"; (31) July
29, 2020 "discussion w/ family"; (32) August 11, 2020 "correspondence d/c";
(33) August 13, 2020 "discussion w/ family"; (34) August 26, 2020 "discussion
w/ client"; (35) September 8, 2020 "discussion w/ client"; (36) September 29,
2020 "discussion w/ client; (37) October 15, 2020 "investing def lien issues";
(38) October 15, 2020 "discussion w/ client"; and (39) October 16, 2020
"discussion w/ client." (Pl. Billing Statement.)

notification from the Court's [ECF] system[,] [t]his excessive specificity appears designed to inflate the total number of hours billed, by attributing a separate 6 minutes to each brief task.") (internal quotation marks and citation omitted).

Here, the Court is unable to determine, based on the descriptions for the 0.1-hour entries, whether the tasks performed are brief and trivial so as to suggest inflationary billing, which points to the bigger issue of vague billing entries, or are even related to legal matters in the litigation (*i.e.*, "discussions" with client or family, and "correspondence"). The Court finds that these 0.1-hour entries, along with many others, are unreasonably vague, inhibiting its ability to accurately determine the nature of the work done and the reasonableness of the time spent.

Where a court determines that the number of hours expended is "excessive, redundant, or otherwise unnecessary," it may account for such over-billing by applying an across-the-board percentage deduction. *Manzo v. Sovereign Motor Cars, Ltd.*, No. 08-cv-1229(JG), 2010 WL 1930237, at *8 (E.D.N.Y. May 11, 2010); *see Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (noting that district courts have the authority to apply a percentage cut "as a practical means of trimming fat from a fee application") (internal quotation marks and citation omitted). "Similarly, courts routinely apply across-the-board reductions for

vague entries." *Colon v. City of New York*, Nos. 09-cv-8(JBW), 09-cv-9(JBW), 2012 WL 691544, at *21 (E.D.N.Y. Feb. 9, 2012) (citations omitted), *R. & R. adopted*, 2012 WL 686878 (E.D.N.Y. Mar. 2, 2012). "Courts find time entries vague where the attorney listed tasks such as '[c]ommunications regarding records and status,' '[r]eview communications,' and 'trial prep.'" *Raja v. Burns*, No. 19-cv-1328(AMD), 2021 WL 1394638 at *6 (E.D.N.Y. Feb. 2, 2021) (quoting *Houston v. Cotter*, 234 F. Supp. 3d 392, 409 (E.D.N.Y. 2017)). *See also LV v. New York City Dept. of Educ.*, 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010) (noting that billing entries such as "meeting w/co-counsel" and "conference w/ c-counsel" "omit information about the subject matter of the work and have justified reductions in hours in the past"); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172–73 (2d Cir. 1998) (upholding district court's 20% reduction of attorney's fees for, *inter alia*, vagueness, where a number of the time entries read, "letter to court," "staff conference," or "work on motion").

Here, Mr. Zenon billed 0.1 hours on thirty-nine occasions. (Pl. Billing Statement.) Most of these thirty-nine entries denote "discussion(s)" with Plaintiff or Plaintiff's family, or "correspondence" with opposing counsel. (*Id.*) Many of Mr. Zenon's other time entries are similarly vague, detailing work such as the August 23, 2018 "[c]lient meeting" for which he billed 2.1 hours, the May 14, 2019 "discussions with professional

26

investigators" for which he billed 1.4 hours, and other "discussions" and "communications" with time billed ranging from 0.2 to 1.6 hours.  These types of billing entries are analogous to those found unreasonably vague in *LV* and *Kirsch* and warrant an across-the-board percentage cut of 15% to the hours claimed by Mr. Zenon.

### Excessive Time Billed for Certain Tasks

Additionally, Defendants argue that Mr. Zenon spent excessive amounts of time to complete certain tasks, specifically: (1) 5.8 hours for reviewing the case file and drafting, finalizing, and filing the Amended Complaint; (2) 7.7 hours for reviewing the body-worn camera video footage and capturing still images; (3) 2.1 hours on researching whether to attach video exhibits to the Amended Complaint; (4) 1.6 hours for drafting and filing a motion to stay; and (5) 2.4 hours on researching the viability of a motion to transfer the case to state court.  (Def. Opp. at 14.)

In his reply, Plaintiff counters that the time counsel spent reviewing the body-worn camera video footage and preparing the Amended Complaint are reasonable.  (Pl. Opp. at 5–16.) Specifically, Plaintiff argues that counsel carefully reviewed and analyzed the video footage, and based on this careful review, he was able to corroborate Plaintiff's version of the incident as to Defendant Titus' lack of justification for tasing Plaintiff, the officers' misidentification of Plaintiff and his subsequent false

arrest, and the officers' denial of timely medical treatment for Plaintiff. (*Id.* at 5—14.) Furthermore, Mr. Zenon was able to determine that the initial allegations by Plaintiff as to the extent of his physical injuries were inconsistent with the video footage and amended the allegations accordingly. (*Id.*) Plaintiff also argues that counsel's careful review of the footage allowed him to determine which of the dozen officers at the scene of the incident to name in the Amended Complaint as additional defendants. (*Id.* at 14—15.) As to the time spent on the Amended Complaint, Plaintiff argues that the hours are reasonable, and that Mr. Zenon revised the factual allegations so that they describe the incident in greater detail and removed any allegations inconsistent with the video footage. (*Id.* at 15—16.)

The Court finds the time spent on reviewing the video footage, preparing the Amended Complaint, researching whether to attach video exhibits to the Amended Complaint, and drafting and filing the motion for a stay to be within the realm of reasonableness and not warranting a deduction. Specifically, the Court notes that based on Mr. Zenon's time record, the 5.8 hours were spent on various tasks that included reviewing the case file, drafting the Amended Complaint, researching potential additional claims, and editing, finalizing, and filing the Amended Complaint. Given the number of tasks involved, the Court finds the time spent to be within reason. *See Jones v. City of New York*, No. 16-cv-

8080(JGK), 2021 WL 3773460, at *20 (S.D.N.Y. Aug. 24, 2021) (rejecting as baseless defendant's assertion that 2.0 hours expended by attorney on drafting the amended complaint are excessive).

However, the Court finds that Plaintiff may not recover fees for the 2.4 hours spent researching the viability of a motion to transfer the case to state court, given that the motion was never filed and Plaintiff, as the party who initiated the instant action, chose to do so in federal court.

### Charging Attorney Rate for Clerical Tasks

Finally, the Court finds that the claimed hours should be reduced for charging Mr. Zenon's regular rate for the time spent on clerical tasks. The Second Circuit has held that district courts have "the authority and discretion to either reduce an attorney's hourly rate for time spent on clerical tasks or apply an across-the-board reduction to the hours billed or total fee award to account for time spent on clerical tasks (or block-billed time entries reflecting a mix of clerical and legal work)." *Lilly*, 934 F.3d at 233–34 (finding "the district court's imposition of a 10% reduction to the fee award on account of clerical work appropriate, and certainly not an abuse of discretion"). "The fact that [an attorney] is a solo practitioner does not entitle him to his full hourly rate as an attorney for purely clerical work." *Id.* at 234.

Here, Defendants argue that 3.1 hours billed for clerical tasks should be billed at an administrative rate. (Def. Opp. at 14–15.)  These tasks include drafting and reviewing medical releases, preparing the summons, civil cover sheet, and service documents, communicating with a process server, and researching service and waiver of service issues. (*Id.*)  Uniform percentage deductions are warranted for attorney time spent on administrative tasks or work that should have been performed by lower-billing attorneys. *De La Paz v. Rubin & Rothman, LLC*, No. 11-cv-9625(ER), 2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013).  The Court finds that a percentage cut is warranted because the foregoing tasks, with the exception of research on service issues, appear to be administrative or, at the very least, tasks that could have been completed by an attorney with less experience such that a paying client would not be willing to pay Mr. Zenon's regular rate. *See Lamaka v. Russian Desserts Inc.*, No. 18-civ-7354(ILG), 2021 WL 2188280, at *16 (E.D.N.Y. Feb. 12, 2021) (applying a 20% reduction to the hours requested for tasks such as "preparing proofs of service" that could reasonably have been performed by an attorney with a lower billing rate or an administrative staff with no billing rate), *R. & R. adopted*, 2021 WL 2184870 (E.D.N.Y. May 28, 2021); *Lee v. Santiago*, No. 12-cv-2558(PAE), 2013 WL 4830951, at *4 (S.D.N.Y. Sept. 10, 2013) ("Where an attorney has billed time for . . . drafting boilerplate procedural forms such as

30

certificates of service, such time should not be compensated at an attorney-level billing rate"); *Torcivia*, 437 F. Supp. at 253 ("Clerical tasks include . . . requesting and receiving medical records . . . .").

Based on the foregoing billing deficiencies, namely, vague billing descriptions, requesting fees for the time spent on a potential motion to transfer that was never filed, and billing at regular rate for administrative or junior-level attorney tasks, the Court applies a 15% reduction to the remaining 110.15 hours.

### C. Fee Award Calculation

The Court's fee award calculation for Mr. Zenon, having factored in the reduced rate, exclusions, and the percentage deductions discussed *supra*, is set forth below.

| Name | Rate | Hours | Total |
|------|------|-------|-------|
| Gregory Zenon, Esq. | $350 | 169.45 | |
| Deduction for Hours Predating the Commencement of the Federal Action and/or Related to State Law Claims | | -35 | |
| Deduction for Fees After Date of Offer | | -24.3 | |
| Percentage Cut for (1) Vague Billing Entries; (2) Task Without Result; and (3) Billing Regular Rate for Clerical Tasks | | -15% | |
| | $350 | 93.63 | $32,770.50 |
| Half Rate for Travel Time | $175 | -3.4 | -595.00 |
| **TOTAL FEE AWARD** | | | **$32,175.50** |

**IV.   Reasonable Costs**

Finally, Mr. Zenon also seeks an award of costs and disbursements in the amount of $669.65. (Zenon Decl. ¶ 4.) Courts generally award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (internal quotation marks and citation omitted). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Volpe v. Nassau Cnty.*, No. 12-cv-2416(JFB), 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016) (internal quotation marks and citations omitted).

Here, Plaintiff seeks reimbursement for six mail receipts totaling $70.65, the filing fee of $400.00, and process service fees in the amount of $199.00. (Pl. Billing Statement.) Plaintiff submitted photocopied documentation of the mail receipts and process service fees with his motion for attorney's fees, and the Court takes judicial notice of the filing fee of $400. (*Id.*) The Court concludes that Plaintiff's costs are reasonable and adequately documented. Accordingly, the Court awards $622.25 in costs, having excluded the cost related to the state law claims in the amount of $47.40.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's counsel is entitled to $32,175.50 in fees and $622.25 in costs.

**SO ORDERED**

_____/s/_____
Kiyo A. Matsumoto
United States District Judge

DATED:  Brooklyn, New York
        March 28, 2022